UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ESTRADA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>KAG WEST, LLC, an Ohio limited liability company; and DOES 1-100,<br><br>Defendant. | No. 1:24-CV-00257-KES-CDB<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT KAG WEST'S MOTION FOR SUMMARY JUDGMENT<br><br>Doc. 30 |

Plaintiff Jose Estrada proceeds in this action against defendant KAG West, LLC ("KAG West") for disability discrimination, failure to accommodate, and failure to engage in the interactive process in violation of the Fair Employment Housing Act ("FEHA), Cal. Gov't Code § 12940 *et seq.*; wrongful termination in violation of public policy; and failure to deliver Estrada's personnel file in violation of sections 226, 432, and 1198.5 of the California Labor Code.[1]  Doc. 1, Ex. A, at 14–24 ("Compl").  KAG West moves for summary judgment on all claims.  Doc. 30-1.  Estrada opposed the motion, Doc. 31, and KAG West filed a reply, Doc. 32.  For the reasons set forth below, KAG West's motion for summary judgment is granted in part and

---

[1] Estrada's complaint also alleges a claim of intentional infliction of emotional distress ("IIED").  *See* Doc. 1, Ex. A.  However, in his opposition to KAG West's motion for summary judgment, Estrada withdrew this claim.  Doc. 31 at 26.  This Order therefore dismisses the IIED claim.

denied in part.

## I. BACKGROUND

On August 15, 2018, Estrada applied to work as a tanker truck driver at KAG West's location in Bakersfield. Doc. 30-3, Ex. C, at 61. On the application, he indicated that he wanted to work at the Bakersfield location, was seeking local driving opportunities, and did not want to relocate. Doc. 30-3, Ex. C, at 62. Estrada resided in Bakersfield at that time, and he continues to reside there. Doc. 30-4 (Defendant's Statement of Undisputed Facts ("DSUF")) ¶ 3. On August 23, 2018, Estrada began his employment with KAG West as a tanker truck driver at its location in Bakersfield. DSUF ¶ 1. KAG West informed Estrada in writing that the essential duties of being a tanker truck driver at KAG West included, among other requirements, that the driver be able to "bend, reach, push, pull, stoop, squat, kneel, and climb" and "grasp, lift as high as above the head, carry and handle heavy equipment up to 50 [pounds] as necessary." DSUF ¶ 4.

Around February 2, 2021, Estrada was involved in a work-related automobile accident in which he was injured. *See, e.g.*, Doc. 30-3 at 117; Estrada Dep. 36:25–39:4. Estrada was treated by his primary treating physician and was also evaluated by Ray L. Craemer, M.D., in an agreed medical examination. *See, e.g.*, DSUF ¶¶ 5–7. On November 19, 2021, Dr. Craemer examined Estrada, found he was "temporarily disabled," and noted he anticipated Estrada would approach "maximal medical improvement" in approximately ten months. DSUF ¶¶ 6. In February 2022, Estrada's primary treating physician released him for light duty work with restrictions, including "[l]ifting, pushing, or pulling limitations: [u]p to 25 pounds," "[l]imited bending or twisting," and "[l]imited kneeling or squatting." DSUF ¶ 7. There were no such light duty assignments available at the Bakersfield terminal at that time, and KAG West helped to secure a "temporary transitional duty assignment" for Estrada with a thrift store that was not a part of the KAG West organization. DSUF ¶ 9. Estrada worked at the thrift store for about a month before informing KAG West that he could not physically perform the duties of the temporary assignment. DSUF ¶ 10. On September 12, 2022, Estrada was examined again by Dr. Craemer, who found that Estrada had reached "maximal medical improvement" and was "unable to return to his preinjury

2

work" of tanker truck driving for KAG West. DSUF ¶ 11; *see also* Doc. 30-3 at 106. He noted Estrada's work restrictions as: "[f]or the right wrist, [Estrada] is precluded from very forceful strength activities with the right hand" and "[f]or the lumbar spine, he is precluded from heavy work." DSUF ¶ 11; *see also* Doc. 30-3 at 104.

On October 11, 2022, Estrada emailed Lorie Kim in KAG West's human resources department, stating he had been receiving workers' compensation for the past 20 months and that he was ready "to get back to work with restrictions." Doc. 30-3, Ex. M, at 118. Kim responded by asking if Estrada had been out for a work-related injury. *Id.* at 117. Estrada confirmed he had been and reiterated he would like to return to work. *Id.* Kim referred Estrada to Sarah Repella in the workers' compensation department. *Id.* On October 27, 2022, at 3:57 p.m., Estrada emailed the following message to Kim, copying Repella:

> Per our conversation, you said that there was not [light] duty at the terminal and you're correct[.] I asked Steve at the terminal and said the same thing. But I remember that there's a place a thrifty store that I worked before, Could you please send me back there to work. I would look forward to hearing from you[.] And [a]lso I have experience in traffic control [f]low and warehouse management[.] I don't know if you have a copy of my resume. I just have 5 years of driving experience the rest of my experience is elsewhere. Could you please take a look, I'm going to revise my resume, when ready I'll send it to you. Thank you[.]

*Id.* at 116.[2] At 4:00 p.m., Kim replied that Estrada's inquiry was properly addressed to Repella. *Id.* at 115. Twelve minutes later, Repella replied to Estrada's email with the following message:

> The position you are referring to at the thrift store was a temporary assignment while you were recovering from your injury and while your work restrictions were temporary. At this time, your doctor has advised that your work restrictions are permanent. As noted below, we are not able to accommodate your permanent work restrictions. Please reach out to your attorney for further discussion.

*Id.*

On February 21, 2025, KAG West moved for summary judgment on all claims, or in the alternative, for partial summary judgment. Doc. 30-1. In support of the motion for summary judgment, KAG West filed the declarations of Sara Repella, Doc. 30-2, and Brian L. Johnsrud, Doc. 30-3, and a statement of undisputed facts, Doc. 30-4. Repella's declaration states: "In

---

[2] There is nothing else in the record regarding the conversation that Estrada references having with Kim prior to sending this email (*i.e.*, "Per our conversation").

3

1  connection with the Worker's Compensation lawsuit, and in April 2021, I coordinated the
2  collection and production of Estrada's personnel file and provided it to [KAG West's] worker's
3  compensation counsel so that they could in turn provide it to Estrada's worker's compensation
4  counsel. I later received an email directly from one of Estrada's lawyers . . . requesting his
5  personnel file and I did not respond further given the prior production of Estrada's personnel file
6  and the fact that there were ongoing legal proceedings in the worker's compensation forum."
7  Doc. 30-2 ("Repella Decl.") ¶ 10.
8      On March 13, 2025, Estrada filed an opposition to the motion, Doc. 31, along with the
9  declarations of Jonathan Roven and Estrada, Docs. 31-1, 31-2, a compendium of exhibits,
10 Doc. 31-3, objections to evidence KAG West offers in its motion for summary judgment, Doc.
11 31-4, and a request for judicial notice of several maps demonstrating various distances between
12 cities and KAG West's answer to the demand for arbitration, Doc. 31-5.[3] Estrada's declaration
13 states that "[i]t is very common in KAG West's line of work that employees will relocate" and
14 that "[he] would have relocated anywhere in California and the United States for a position had
15 KAG West offered them to me." Doc. 31-2 ("Estrada Decl.) ¶ 2. On March 21, 2025, KAG
16 West filed its reply. Doc. 32. KAG West also filed a statement of opposition to Estrada's
17 objections to evidence. Doc. 33.

**II.   LEGAL STANDARD**

19     Summary judgment is appropriate if "there is no genuine dispute as to any material fact
20 and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is
21 "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Momox-Caselis*
22 *v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021) (internal quotations omitted) (citing *Anderson v.*
23 *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it "might affect the
24 outcome of the suit under the governing law." *Anderson*, 477 U.S. at 841. The parties must cite
25 "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The Court then views the
26 record in the light most favorable to the nonmoving party and draws reasonable inferences in that

---

[3] KAG West does not oppose the request for judicial notice. *See* Doc. 34. The request is therefore granted.

4

party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Id.* at 587 (citations omitted).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses and "establish that there is a genuine issue of material fact." *Matsushita*, 475 U.S. at 585. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586 (citation omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to survive summary judgment. *Anderson*, 477 U.S. at 252.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 252 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment. But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (citing *Celotex*, 477 U.S. at 322).

**III.   EVIDENTIARY OBJECTIONS**

Estrada raises objections to the evidence cited in support of and in opposition to the motion for summary judgment. *See generally* Doc 31-4. The objections are "garden variety evidentiary objections" such as authentication, relevancy, hearsay, foundation, and speculation.

1  *See Torres v. Los Angeles Sheriff's Dept.*, Case No. CV 22-07450-MWF (MARx), 2024 WL
2  4720808, at *5 (C.D. Cal. Aug. 14, 2024).

3        "[A]t the summary judgment stage, we do not focus on the admissibility of the evidence's
4  form. We instead focus on the admissibility of its contents." *Sandoval v. Cnty. of San Diego*, 985
5  F.3d 657, 666 (9th Cir. 2021). That is, though such objections could prove cognizable at trial,
6  only the admissibility of the relevant facts at trial, not the form of these facts as presented in the
7  motion, matters for purposes of a motion for summary judgment. *See id.* Where "the contents of
8  a document can be presented in a form that would be admissible at trial—for example, through
9  live testimony by the author of the document—the mere fact that the document itself might be
10 excludable hearsay provides no basis for refusing to consider it on summary judgment." *Id.*
11 (citations omitted).

12       To the extent that the Court relies upon evidence to which a party objects in deciding the
13 motion for summary judgment, the objections are overruled. To the extent the Court does not, the
14 objections are denied as moot.

15 **IV.   ANALYSIS**

16       KAG West moves to dismiss each of Estrada's claims. For the reasons set forth below,
17 KAG West's motion for summary judgment is granted as to Estrada's claims for disability
18 discrimination and failure to deliver personnel files and denied as to Estrada's claims for failure
19 to accommodate, failure to engage in the interactive process, and wrongful termination in
20 violation of public policy. Estrada's IIED claim is also dismissed as withdrawn. *See* Doc. 31 at
21 26.

22       **A.   <u>Disability Discrimination</u>**

23       "To establish a prima facie case of disability discrimination [under the Fair Employment
24 Housing Act ("FEHA")], a plaintiff must show that: (1) [he] suffered from a disability; (2) could
25 perform the essential duties of the job with or without reasonable accommodations, i.e., [he] was
26 a 'qualified individual'; and (3) was subjected to an adverse employment action because of the
27 disability." *McCarthy v. R.J. Reynolds Tobacco Co.*, 819 F. Supp. 2d 923, 934 (E.D. Cal. 2011)
28 (quoting *Brundage v. Hahn*, 66 Cal. Rptr. 2d 830, 835 (Cal. Ct. App. 1997)). The parties do not

dispute that Estrada suffers from a disability as defined by FEHA. Rather, the parties primarily argue whether Estrada is a "qualified individual"—that is whether Estrada could perform the essential duties of the job with or without reasonable accommodation. *See id.*

The essential duties of being a tanker truck driver for KAG West included, among other requirements, the ability to "grasp, lift as high as above the head, carry and handle heavy equipment up to 50 [pounds] as necessary." DSUF ¶ 4. On September 12, 2022, Ray L. Craemer, M.D., as part of a comprehensive medical/legal evaluation noted that Estrada had reached "maximal medical improvement" and was "unable to return to his preinjury work." *See* Doc. 30-3 at 106. The evaluation does not list the details of his "preinjury work," but reflects that Estrada had previously given the doctor a description of his job duties as a tanker truck driver at KAG West. *See* Doc. 30-4 at 78, 101. Specifically, Dr. Craemer found that Estrada had decreased grip in his right wrist and issues with his lumbar spine. *See* Doc. 30-3 at 104. Given these findings, he noted the following permanent "Work Restriction[s]": "[f]or the right wrist, [Estrada] is precluded from very forceful strength activities with the right hand" and "[f]or the lumbar spine, he is precluded from heavy work." *Id.* Given Estrada was precluded from performing heavy work, and tanker truck drivers at KAG West are required to be able to lift up to 50 pounds, Estrada was unable to perform the essential duties of the tanker truck driver position at KAG West.[4]

---

[4] KAG West attempts to take this finding further, arguing that Estrada's disability determination precluded him from driving and from being a tanker truck driver *in general*, not just being a tanker truck driver for KAG West. *See, e.g.*, Doc. 30-1 at 17. However, Estrada's work restrictions did not preclude him from driving, but rather from heavy work and forceful strength activities with his right hand. These restrictions do not necessarily preclude him from being a truck driver under 49 CFR § 391.41(b) or under other companies' requirements for being a truck driver. KAG West's conclusory assertion that "Estrada's permanent impairments to grip and back" indicate that Estrada "could not safely pull himself up into the cab, climb a ladder to get on top of a trailer, change a tire, or inspect and secure the 'tailgate, tailboard, doors, tarpaulins, spare tire and other equipment used in its operation, and the means of fastening the commercial motor vehicle's cargo,'" as required by 49 CFR §§ 392.7 and 392.9(a), is not supported by medical expert testimony. *See* Doc. 32 at 7–8. It is also not clear that the regulations require that *the driver* be able to do the actions KAG West lists; rather, the regulations provide that the actions must be complete and that the driver must "assure himself" that the requirements have been met. *See* § 392.9(b). Estrada's work restrictions demonstrate only that Estrada did not meet KAG West's specific requirements to be a tanker truck driver.

7

Estrada does not genuinely contest this.[5] In fact, Estrada confirmed in his deposition testimony that his work restrictions were permanent. Doc. 30-3, Ex. A ("Estrada Dep.") at 95:11–96:4. Moreover, once cleared for work, he did not seek reinstatement to his previous position as a truck driver; rather, acknowledging his permanent work restrictions, he requested to come back to KAG West in a light duty position. Estrada Dep. 91:11–92:25, 93:15–94:16; *see also* Doc. 30-3, Ex. M. at 114–18.

Finally, Estrada's assertion that he may have been qualified for other positions to which he could have been reassigned in KAG West's organization is "relevant to [his] claim for failure to accommodate . . . and to [his] claim for failure to engage in the interactive process" but does not save his claim for disability discrimination. *See Atkins v. City of Los Angeles*, 214 Cal. Rptr. 3d 113, 129–30 (Cal. App. Ct. 2017). The issue for a disability discrimination claim is whether an employee could perform the essential functions of the employee's previous job, not the essential functions of the job to which the employee sought to be reassigned. *Id.* There is no dispute of material fact that Estrada could not perform the essential functions of a tanker truck driver at KAG West.

Therefore, KAG West's motion for summary judgment as to Estrada's claim for disability discrimination is granted.

### B.   Failure to Accommodate

"The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Scott v. City of Yuba City*, No. CIV. S-08-873 LKK/GGH, 2009 WL 4895549, at *11 (E.D. Cal., Dec. 11, 2009)

---

[5] Estrada only contests KAG West's assertion that he was precluded from driving and argues that, therefore, KAG West failed to show he was not a qualified individual. *See* Doc. 31 at 10–13. Though the Court agrees Estrada's disability determination did not preclude him from driving, Estrada's argument is inapposite: the question is not whether he was able to drive, the question is whether Estrada could perform the essential functions of the specific job that he held with KAG West. As noted below, he agrees he could not.

(citing *Scotch v. Art Institute of California*, 93 Cal. Rptr. 338, 357–58 (2009)).  KAG West asserts that Estrada cannot demonstrate the second two elements.  Doc. 30-1 at 18.

KAG West argues that Estrada is not a qualified individual for purposes of this claim for the same reasons he is not a qualified individual for purposes of his disability discrimination claim.  *Id.*  However, Estrada's claim that KAG West failed to accommodate his disability is based on his contention that, as there were no positions available at the Bakersfield terminal for which Estrada was qualified given his work restrictions, KAG West should have offered to transfer him to another location within its organization that had positions available for which Estrada was qualified.[6]  Doc. 31 at 13–16.  As noted above, "[w]here the plaintiff contends that an employer failed to accommodate by reassigning him or her to another position, 'the plaintiff proves he or she is a qualified individual by establishing that he or she can perform the essential functions of the position to which reassignment is sought, rather than the essential functions of the existing position.'"  *Atkins*, 214 Cal. Rptr. 3d at 133.  The plaintiff also bears the burden of production of identifying that such a vacant position existed.  *See Issaian v. J.B. Hunt Transport Servs., Inc.*, Case No. 2:20-cv-00732-SVW-MAA, 2021 WL 2450784 , at *4 (C.D. Cal. May 4, 2021) (citations omitted).

Estrada points to Repella's deposition testimony to demonstrate that light duty positions were available at various KAG West locations between October 2022 and December 2024.  *Id.* at 14; *see also* Doc. 30-3, Ex. B ("Repella Dep.") at 21:18–23:23.  Repella indicated that there were positions that did not require heavy work, "such as clerical work, safety, dispatch, et cetera," available at KAG West between October 2022 and December 2024 "throughout the United States."  Repella Dep. 21:18–23:23.  KAG West's argument that this testimony does not show that any positions were available in "October 2022," Doc. 32 at 11, is unconvincing.  It is undisputed that Estrada was on leave throughout the period between October 2022 and December

---

[6] Estrada does not argue that KAG West was obligated to promote Estrada or to create a new position for Estrada in the Bakersfield office.  *See generally* Doc. 31; *see also, e.g.*, *Atkins*, 214 Cal. Rptr. 3d at 133 (not required to promote employee or create new position to comply with FEHA).  Nor does Estrada argue that KAG West was required to allow Estrada to return to his temporary position at the thrift shop.  *See generally* Doc. 31.

2024, and KAG West had a duty to continue to engage in the interactive process with him the entire time. *See, e.g.*, Doc. 30-1 at 24. Therefore, light duty positions that were available during that time would be relevant as potential accommodations for Estrada.[7]

Estrada testified in his deposition that he was qualified to perform several light duty positions at KAG West including dispatch, maintenance, and delivering trucks.[8] Estrada Dep. 94:2–11. In his email to Repella requesting to come back to work, Estrada indicated that he had experience in warehouse management and "traffic control" (*i.e.*, dispatch) and asked her to look at his resume. Doc. 30-2, Ex. M, at 116. In its reply, KAG West, citing Estrada's initial application to work at KAG West, asserts that Estrada's work experience at IKEA does not establish that Estrada was qualified to be a commercial vehicle dispatcher. Doc. 32 at 13 (citing Doc. 30-1, Ex. C). Assuming KAG West is referencing Estrada's testimony that one position he held at IKEA was in "flow and traffic," *see* Estrada Dep. 23:10–25, KAG West's conclusory assertion that Estrada was not qualified to work in dispatch does not sufficiently rebut Estrada's testimony that he was qualified for such a position given his prior dispatch experience. Therefore, Estrada has met its burden of production to demonstrate that there were positions

---

[7] KAG West's argument that Repella's testimony referred only to roles available at KAG West's parent company, Kenan Advantage Group, Inc., is unconvincing. Doc. 32 at 11. Repella was asked in her deposition if there were positions available at "Kenan Advantage Group" that did not require heavy work. *See, e.g.*, Repella Dep. 29:13–16. She initially replied "[n]ot at the Bakersfield terminal"—where Estrada worked for KAG West—which indicates she understood the question to ask about available positions at KAG West. *See* Repella Dep. 29:13–17. This argument is further unavailing as Estrada's employer was frequently referred to as "Kenan Advantage Group" throughout the record, including in correspondence from the company to Estrada. *See, e.g.*, Estrada Dep. 67:1–13 (letter sent to Estrada regarding thrift store position states "As part of its return-to-work program, Kenan Advantage Group provides employees with temporary opportunities . . ."); Repella Dep. 11:2–4 (Q. "When's the last time that Mr. Estrada showed up to work for Kenan Advantage Group?" A. March of 2022").

[8] Estrada's argument that those who were injured who worked at the Fresno terminal were often reassigned to light duty work does not necessarily demonstrate a failure to accommodate, because an employer is not required to create a position. *See* Estrada Dep. 94:17–25; *see also Atkins*, 214 Cal. Rptr. 3d at 132. However, it is relevant to whether failing to determine if suitable positions were available at other terminals (including Fresno), and failing to offer such a position to Estrada, was reasonable. *Cf. id.* ("employer's policy or practice of offering other employees the same or similar assistance or benefits . . . is relevant to determining whether such assistance or benefits are 'reasonable'").

available for which he was qualified. *See Issaian*, 2021 WL 2450784, at *4. KAG West has failed to carry its burden to demonstrate otherwise.

As to whether KAG West failed to reasonably accommodate Estrada's work restrictions, Estrada admits that there were no positions at the Bakersfield terminal for which he was qualified to which he could be reassigned. *See, e.g.*, Doc. 30-3, Ex. M, at 116; *see also generally* Doc. 31. Rather, Estrada contends that he should have been offered the opportunity to transfer to another location that had such positions available. Doc. 31 at 13–16. KAG West argues that it was Estrada's duty to affirmatively request a transfer to another location if he sought that accommodation and that Estrada failed to do so. Doc. 30-1 at 20–21; Doc. 32 at 13–15. KAG West asserts that "Estrada made it clear to KAG West that he wanted to work in the Bakersfield area where he lived," citing Estrada's application for employment with KAG West's Bakersfield location from 2018 indicating he was only looking for local driving opportunities at that time and his emails with KAG West employees asking if he could return to the temporary work assignment at the thrift store, which was located in Bakersfield.[9] Doc. 30-1 at 21 (citing DSUF ¶ 2, 12–14); Doc. 32 at 15 (citing DSUF ¶ 9). Estrada asserts that he indicated to KAG West a willingness to transfer, and regardless, KAG West shut down conversations regarding accommodations before Estrada could make an explicit request for transfer to another location.[10] Doc. 31 at 13–16.

"FEHA defines 'reasonable accommodation' to include 'reassignment to a vacant position.'" *Atkins*, 214 Cal. Rptr. 3d at 132–33. That is, "[w]here a disabled employee requests reassignment as an accommodation" because he can no longer perform the functions of his previous position, the employer may be liable under FEHA if it "fails to reasonably accommodate

---

[9] Estrada disputes that his application indicated that he sought only local work, *see* DSUF ¶ 2, but the application shows that Estrada marked he was applying for a position in Bakersfield and was looking for "[l]ocal" driving opportunities, Doc. 30-3, Ex. C, at 62. However, this demonstrates the type of work Estrada sought in 2018, not necessarily what he was seeking in 2022. *Cf. O'Kell v. Haaland*, No. 2:18-cv-00279-SAB, 2025 WL 43544, at *1 (E.D. Wash. Jan. 7, 2025) (willingness to relocate in the past does not necessarily indicate willingness to relocate in the future).

[10] This argument is also relevant to Estrada's claim for failure to engage in the interactive process, as addressed below.

11

1 that employee by reassigning him or her to a comparable [or lower graded], vacant position
2 whose essential functions the employee can perform." *Id.* at 133. However, "FEHA does not
3 require reassignment if there is no vacant position the employee is qualified to fill." *Id.* In line
4 with this, courts have held that "a reasonable accommodation may include offering a position at a
5 different location." *Issaian*, 2021 WL 2450784, at *4 n.1 (citing *Buckingham v. U.S.*, 998 F.2d
6 735 (9th Cir. 1993) (holding transfer to another office location not per se unreasonable
7 accommodation)).

8 KAG West cites *Issaian* to support its claim that there is no triable fact regarding whether
9 it failed to accommodate Estrada. Doc. 30-1 at 20 (citing *Issaian*, 2021 WL 2450784). In
10 *Issaian*, the court granted summary judgment in the employer's favor on plaintiff's failure to
11 accommodate claim where the plaintiff, an employee at the employer's South Gate terminal
12 location, requested reassignment to a light duty position and the employer confirmed there were
13 no such vacant positions at the employee's location. 2021 WL 2450784. The court noted that,
14 even though a reasonable accommodation could include offering a position at a different location,
15 summary judgment in that case was not precluded by the employer's failure to search for vacant
16 positions outside of the South Gate terminal, because plaintiff had offered "no evidence of his
17 interest in, ability to relocate to, or even the existence of another facility, much less a vacant
18 position in another facility." *Id.* at *4 n.1. The court also noted that "although this fact is not
19 pivotal, the record reflects that [the plaintiff] lived blocks from the South Gate terminal, which
20 would undermine any assumption [the employer] might have otherwise made about [the
21 plaintiff's] interest in relocating to another facility." *Id.*

22 This case is distinguishable from *Issaian* in that Estrada offers evidence of his interest in
23 and ability to relocate to other locations as well as evidence of vacant positions in other locations.
24 Doc. 31-2 ("Estrada Decl.") ¶ 2 (stating that he "would have relocated anywhere in California and
25 the United States for a position had KAG West offered them to me"); Repella Dep. 21:18–23:23
26 (KAG West had light duty positions available across United States during relevant time). Estrada
27 also offers evidence that employee relocation is common in KAG West's line of work. Estrada
28 Decl. ¶ 2. Additionally, viewed in the light most favorable to Estrada, Estrada's email

12

correspondence with KAG West's human resources and workers' compensation departments about returning to work with accommodations implied a willingness to relocate. Doc. 30-3, Ex. M, at 114–18. In his emails, Estrada first confirms he is aware that there is not any light duty work available for him at the Bakersfield terminal and goes on to inform Repella that he has skills in light duty positions, such as dispatch and warehouse management and asks her to look at his resume. *Id.*

Given his acknowledgement that there were no light duty positions available at the Bakersfield terminal, a reasonable jury could conclude that by subsequently detailing his skills and experiences related to light duty work, and by asking to send his resume to the person from whom he was requesting such accommodation, Estrada indicated a willingness to transfer to a location where such positions were available. While an employee must engage in the interactive process and "can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it," an employee is not required to speak any "magic words" to effectively request an accommodation under the statute. *Soria v. Univision Radio Los Angeles, Inc.*, 210 Cal. Rptr. 3d 59, 83 (Cal. Ct. App. 2016); *see also cf. Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000) (employer obligated to engage in interactive process with employee when employee requests accommodation *or when employer recognizes that accommodation is necessary*), *abrogated on other grounds by US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). KAG West also argues that Estrada's proximity to the Bakersfield terminal "undermines any assumption [it] might have otherwise made about [Estrada's] interest in relocating to another facility," but *Issaian* explicitly notes that such a fact is not "pivotal." Doc. 30-1 at 20; *see also Issaian*, 2021 WL 2450784, at *4 n.1. Such evidence is for the jury to consider in light of all the evidence.

KAG West also cites *Betti v. Kaiser Permanente*, a case arising under the Americans with Disabilities Act, rather than FEHA, in support of its motion. No. CIV-S-03-2678 DFL DAD, 2005 WL 3844212 (E.D. Cal. July 25, 2005). In *Betti*, the plaintiff, an employee at a Stockton location, requested a transfer to either the South Sacramento or Modesto locations of her employer's organization after accommodations the employer provided to her at the Stockton

location did not prove successful. *Id.* at *2–3. Her employer communicated to her that there were not any vacant positions for her current job classification at the locations she desired, but that, if she wanted, it would search other locations and job classifications. *Id.* at *5. In opposing the motion for summary judgment, the plaintiff argued that her employer should have offered her an available position for which she had been qualified at the organization's Richmond location. *Id.* The court rejected this argument because there was "nothing in the record indicating that [plaintiff] had a desire . . . to transfer to the Richmond facility, or that she communicated such a desire to [her employer]." *Id.* Rather, the employer "fulfilled its obligations . . . by searching for an open position for [plaintiff] at the locations she requested, offering to broaden its search, and promising to inform [plaintiff] if a position became available." *Id.*

*Betti* is distinguishable and does not demonstrate that summary judgment is warranted here. In *Betti*, the employer attempted to provide the plaintiff on-site accommodations, and when those did not work, continued to engage in the accommodations process, resulting in the employee's request to transfer. *Id.* at *1-3. The court found that the employer fulfilled its obligations by searching for open positions and offering multiple times to broaden its search and promising to inform the plaintiff if a position became available. *Id.* at *5. Here, in contrast, KAG West responded to Estrada's email by stating only that KAG West was unable to accommodate Estrada's work restrictions and that Estrada should "reach out to [his] attorney for further discussion." KAG West's response effectively shut down the communications between Estrada and KAG West regarding his skills and qualifications and foreclosed any possibility of further discussion regarding a transfer accommodation. Given KAG West's decision to unilaterally terminate accommodation discussions, which eliminated Estrada's ability to follow up regarding a transfer accommodation, it cannot establish as a matter of law that the lack of an accommodation is due to Estrada's failure to explicitly request a transfer. *See id.*

Nor is KAG West's argument persuasive that its payment of workers' compensation benefits while Estrada was on leave was a fair and reasonable accommodation absolving it of any further obligations. *See* Doc. 30-1 at 21 (citing Cal. Code Reg., tit. 2 sec. 11068(c)); *see also Atkins*, 214 Cal. Rptr. 3d at 134 ("The duty to reasonably accommodate a disabled employee is a

14

continuing one that is not exhausted by one effort. A single failure to reasonably accommodate an employee may give rise to liability, despite other efforts at accommodation." (internal citations omitted)). Section 11068(c) of title 2 of the California Code of Regulations provides that "[w]hen the employee cannot presently perform the essential functions of the job, or otherwise needs time away from the job for treatment and recovery, holding a job open for an employee on a leave of absence or extending a leave provided by the CFRA, the FMLA, other leave laws, or an employer's leave plan may be a reasonable accommodation *provided that the leave is likely to be effective in allowing the employee to return to work at the end of the leave*, with or without further reasonable accommodation, and does not create an undue hardship for the employer." (emphasis added). Providing leave while Estrada's restrictions were still deemed temporary may have been a reasonable accommodation during that period, but Estrada's claims are premised on KAG West's alleged failure to provide a reasonable accommodation after his restrictions became permanent.

Estrada requested to come back to work for KAG West and requested reassignment to a light duty position given his work restrictions. KAG West essentially argues that it reasonably assumed Estrada would not want to relocate for such a reassignment given that he resided near the Bakersfield terminal, he requested to return to the thrift store in Bakersfield, and he indicated on his 2018 application to work at KAG West that he was only seeking local driving opportunities at that time. It is a question for the jury to determine if such an assumption was reasonable in light of Estrada's email communications and testimony that he was willing to relocate and that relocation was common for employees in this line of work. As a jury will need to determine whether it was reasonable for KAG West to assume Estrada would not want to relocate for reassignment, and for KAG West to not ask him about his interest in relocating and to not search for or offer him vacant positions for which he was qualified at other locations, summary judgment as to this claim is denied.

### C. **Failure to Engage in the Interactive Process**

"The interactive process [to determine possible accommodations] is triggered either by a request for accommodation by a disabled employee or by the employer's recognition of the need

15

for such an accommodation." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000), *abrogated on other grounds by US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002); *see also* Cal. Gov't Code § 12940(n). The good faith interactive process requires that "both sides must communicate directly, exchange essential information[,] and neither side can delay or obstruct the process." *Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 83 Cal. Rptr. 3d 190, 213 (9th Cir. 2008). "[T]he trial court's ultimate obligation is to isolate the cause of the breakdown [in the interactive process] and then assign responsibility." *Id.* An employer may be liable only if the employer is responsible for the breakdown of the interactive process. *Id.*

KAG West argues that "any breakdown in the interactive process was due to Estrada." Doc. 30-1 at 23. KAG West argues, without explanation, that Estrada's decision to work for another company after KAG West told him that it could not accommodate him, refused to discuss the matter further with him, and directed him to his attorney indicates that Estrada "walked away from [the interactive] process" and did not engage in good faith in the interactive process.

KAG West's assertion that it adequately engaged in the interactive process up until that point, by communicating with Estrada and providing him with temporary work when his restrictions were temporary, and by placing him on leave when he could not perform the temporary assignment, falls flat. *Cf. Atkins*, 214 Cal. Rptr. 3d at 132 (employers have continuing duty to engage in accommodation process, singular failure can give rise to liability). Estrada's claim does not rely on an assertion that KAG West failed to engage in the interactive process at those times; rather, Estrada claims that once his work restrictions became permanent and he reached out to KAG West to discuss possible accommodations to come back to work, KAG West unreasonably halted the interactive process of finding a suitable accommodation that would permit him to come back to work. *See* Doc. 31 at 16–19.

Finally, KAG West argues again that Estrada did not communicate that he was interested in transferring locations, and thus, KAG West cannot be held liable for failure to engage in the interactive process. *See, e.g.*, Doc. 32 at 14–15. While FEHA "does not hold [an employer] responsible for [an employee's] failure to communicate essential information to the employer," *Alejandro v. ST Micro Electronics, Inc.*, 178 F. Supp. 3d 850, 863 (N.D. Cal. Apr. 8, 2016)

16

(citing *Nadaf–Rahrov*, 83 Cal. Rptr. 3d at 213), it does require that the employer engage in the process in such a manner that the employee is able to communicate such essential information, *Nadaf–Rahrov*, 83 Cal. Rptr. 3d at 213. As discussed above, Estrada emailed Repella that he understood there were no light duty positions available in Bakersfield but that he wanted to get back to work. Doc. 30-3, Ex. M, at 114–18. He indicated that he had skills and experiences for certain light duty positions, stated that he would send her his resume, and asked her to look at it. *Id.* She responded twelve minutes later that KAG West could not accommodate his work restrictions, without looking at his resume, without further discussion, and without considering the possibility of offering him a light duty position outside of Bakersfield. *Id.* As noted above, a reasonable jury could find that Estrada's email implied a willingness to relocate and could find that KAG West failed to engage in the interactive process in good faith by prematurely and unreasonably terminating the interactive process.

Therefore, summary judgment as to this claim is also denied.

### D. **Wrongful Termination in Violation of Public Policy**

To prove a claim for wrongful termination in violation of public policy, a plaintiff must show that (1) he was employed by the defendant; (2) the defendant discharged the plaintiff; (3) the alleged violation of public policy was a motivating reason for discharge; and (4) the discharge harmed the plaintiff. *Haney v. Aramark Unif. Servs. Inc.*, 17 Cal. Rptr. 3d 336, 348–49 (Cal. App. Ct. 2004).

KAG West first argues that it is entitled to summary judgment on Estrada's claim for wrongful termination in violation of public policy because the claim is derivative of Estrada's FEHA claims, and those claims should be summarily adjudicated. Doc. 30-1 at 24. Given that Estrada's FEHA claims for failure to accommodate and failure to engage in the interactive process survive summary judgment, this argument fails.

KAG West also argues that it is entitled to summary judgment on this claim because Estrada was not discharged at the time he filed his complaint, but rather was on a leave of absence. *Id.* Estrada's employment with KAG West was not actually terminated until after Estrada's deposition in this case, when KAG West learned that Estrada had taken other

1  employment. *Id.* Thus, KAG West also argues that Estrada should have to amend his complaint
2  if he seeks to bring a wrongful termination claim. *Id.*

3  However, Estrada's claim is not premised on KAG West's termination of Estrada
4  following Estrada's deposition. Rather, though he does not use the term "constructive discharge,"
5  Estrada's claim is clearly that he was constructively terminated when he was put on indefinite
6  leave given KAG West's failure to accommodate his work restrictions. The circumstances of
7  Estrada's placement on indefinite leave present a jury question as to whether he was
8  constructively discharged. *See Surrell v. Albertsons LLC*, Case No. 8:23-cv-00937-MRA-KES,
9  2025 WL 1720176, at *12–13 (C.D. Cal. Mar. 31, 2025) (finding that "whether [an employee's]
10 involuntary leave of absence amounts to constructive discharge by [the employer] is a disputed
11 issue of material fact for a jury to decide" where employer placed employee on leave of absence
12 after finding employee could no longer perform the essential functions of a driver position).
13 Accordingly, summary judgment is denied on Estrada's claim for wrongful termination in
14 violation of public policy.

15 **E.     Failure to Deliver Personnel Files**

16 Estrada claims KAG West failed to provide him a copy of his personnel records upon his
17 request, in violation of sections 226, 432, and 1198.5(b)(1) of the California Labor Code. Doc. 1,
18 Ex. A, at 22–23. KAG West argues it is entitled to summary judgment on this claim because it
19 was entitled to not respond to Estrada's request as it had previously provided Estrada's payroll
20 records and personnel file to KAG West's worker's compensation counsel in April 2021, with the
21 expectation that they would be provided to Estrada's counsel in connection with his worker's
22 compensation lawsuit. Doc. 30-1 at 26–27; *see also* Repella Decl. ¶ 10. KAG West also notes
23 that sections 1198.5(n) and (o) of the California Labor Code provide that the right of an employee
24 who "files a lawsuit that relates to a personnel matter against his . . . employer" to inspect or copy
25 personnel records "ceases during the pendency of the lawsuit." Doc. 30-1 at 26–27.
26 Additionally, KAG West claims that summary judgment is appropriate on this claim because it
27 produced Estrada's payroll records during discovery in this lawsuit. Doc. 30-1 at 27.

28 In his opposition, Estrada argues that the Repella declaration's indication that KAG West

1  originally produced the records to its worker's compensation counsel is insufficient, as the
2  declaration does not establish that the records were ever provided to Estrada's counsel.  Doc. 31
3  at 26.  The Court agrees that KAG West has failed to meet its burden to demonstrate that the
4  documents were provided to Estrada in April 2021.  The declaration by Repella that she provided
5  the documentation to KAG West's counsel does not demonstrate that the documentation was in
6  turn provided to Estrada's counsel.

7  However, KAG West also argues that it was not required to produce any personnel
8  documentation to Estrada in response to his request because he had a pending worker's
9  compensation claim.  Doc. 30-1 at 27–27; *see also Garcia v. Wal-Mart Assocs., Inc.*, Case No.:
10  CV 19-07784-CJC (SKx), 2021 WL 4027542, at *2 (C.D. Cal. Mar. 2, 2021) (granting summary
11  judgment on claim because "[plaintiff] d[id] not dispute that he had at least one, if not two,
12  workers' compensation actions pending at the time he made his . . . records request" and
13  "[plaintiff] was barred from seeking the records during the pendency of his employment-related
14  lawsuit").  Repella's declaration details that she received Estrada's request while "there were
15  ongoing legal proceedings in [his] worker's compensation [lawsuit]." Repella Decl. ¶ 10.
16  Estrada has failed to meet its burden to provide any evidence to the contrary.  Nor has Estrada
17  contested KAG West's position that it was not required to provide the documentation pursuant to
18  the provision.  He has therefore waived the argument.  *See, e.g.*, *Arthur J. Gallagher & Co. v.*
19  *Petree*, No. 2:18-cv-03274-JAM-KJN, 2022 WL 1241232, at *5 (E.D. Cal. Apr. 27, 2022)
20  (citation omitted) (failure to oppose arguments in motion for summary judgment constitutes
21  waiver).

22  Therefore, summary judgment as to this claim is warranted.

23  **F.     IIED**

24  Given Estrada's indication of his intent to withdraw his claim of intentional infliction of
25  emotional distress, this claim is dismissed.

26  ///
27  ///
28  ///

**V.   CONCLUSION**

For the foregoing reasons,

1. KAG West's motion for summary judgment is granted in part and denied in part;

2. The motion for summary judgment is granted as to Estrada's claims for disability discrimination and failure to deliver personnel files;

3. Summary judgment is denied as to Estrada's claims for failure to accommodate, failure to engage in the interactive process, and wrongful termination in violation of public policy; and

4. Estrada's IIED claim is dismissed as withdrawn. *See* Doc. 31 at 26.

IT IS SO ORDERED.

Dated:   July 14, 2025

UNITED STATES DISTRICT JUDGE